[Cite as *In re M.B.*, 2016-Ohio-4780.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: M.B.,

A MINOR CHILD

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 15-COA-028


O P I N I O N



CHARACTER OF PROCEEDING: Appeal from the Ashland County Court of
Common Pleas, Juvenile Division


JUDGMENT: Affirmed in part; Reversed in part and
Remanded

DATE OF JUDGMENT ENTRY: June 30, 2016

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Ashland County Prosecutor
110 Cottage Street, Third Floor
Ashland, Ohio 44805


EMILY M. BATES
Assistant Prosecuting Attorney
110 Cottage Street, Third Floor
Ashland, Ohio 44805

For Defendant-Appellant

CHARLYN BOHLAND
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

*Hoffman, P.J.*

{¶1}   M.B., a delinquent child, appeals his adjudication and disposition entered by the Ashland County Court of Common Pleas, Juvenile Division.  Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On October 23, 2014, E.O., a nine year-old student in Ashland City Schools, met with Officer Kim Mager of the Ashland Police Department.  Kris Manley, a Principal in the Ashland City School District, had called the Ashland Police Department to report E.O. alleged she had been the victim of repeated sexual assaults by two neighbors, M.B., and his brother, C.B.

*E.O. Interview with Detective Mager*

{¶3}   When Detective Mager first interviewed E.O. she was a fourth-grade student in typical classes.  E.O. understood the purpose of the interview was to discuss her neighbors, C.B. and M.B.

{¶4}   E.O. informed Officer Mager M.B., a fifteen year-old neighbor, touched her vaginal area, which she referred to as her "bottom." E.O. told Mager M.B. and C.B., M.B.'s sixteen year-old brother, touched her vaginal area behind the shed at the rear of M.B.'s residence on numerous occasions.  E.O. related both M.B. and C.B. inserted their fingers inside her vagina on multiple incidents. E.O. said M.B. digitally penetrated her "five to ten times…I'm not sure, but he does it a lot." She said the incidents with M.B. almost always ended with his fingers insider her vagina. She also said the incidents always occurred behind the shed.

{¶5} E.O. estimated the incidents began in first grade, about three years prior, at age six. She said M.B. and C.B. both touched her vagina on the outside of her clothes and put their hands up her shirt.

{¶6} E.O. described an incident during which S.B., M.B.'s and C.B.'s mother, witnessed M.B. touching her. She stated the incident occurred "right before school started," she believes in late August, 2014 when she was playing in the backyard. E.O. said M.B. told her to "come here" and while they were trying to "spy" on someone, M.B. was "touching me with his fingers inside me." C.B. was "watching to make sure nobody saw it." E.O. stated at the same time, S.B. appeared behind the shed and saw her with her pants and panties down and M.B. sitting in front of her. M.B. had his fingers inside her. E.O. stated S.B. saw M.B. with his fingers inside her because "I was right there where she looked and I saw her looking at me." S.B. yelled at M.B., stating, "That's it! You're grounded and you can't play with her anymore!"

{¶7} E.O. also described an incident during which M.B. attempted to take a video of her with his cell phone while touching her vaginal area.

*M.B. Interview with Lieutenant Joel Icenhour*

{¶8} On October 23, 2014, Lieutenant Joel Icenhour of the Ashland Police Department met with M.B., who at the time was a fifteen year-old freshmen at Ashland High School. Assistant Principal Jon Walter removed M.B. from class and escorted him to Walter's office, where Lieutenant Icenhour was waiting. Principal Walter sat behind the desk, while M.B. and Lieutenant Icenhour sat in two chairs in the office. M.B. was told Lieutenant Icenhour was there to talk to him, M.B. was not under arrest, M.B. did not have to talk to Lieutenant Icenhour if he did not want to, and he was free to leave. Principal

Walter did not engage in the interview, but remained present, according to school board policy.

{¶9} M.B. stated his date of birth is September 28, 1999. Lieutenant Icenhour told M.B. he had come to the high school to discuss statements made by E.O. M.B. indicated he knew E.O., she was his neighbor, and he knew her age. He stated they were friends, and often played together, until he was told he should not be playing with her because he was "in high school."

{¶10} M.B. initially denied sexual conduct with E.O. He then indicated incidents occurred he "wished had not happened." When asked whether he wanted to "walk" Lieutenant Icenhour through the incidents or whether he would rather Lieutenant Icenhour "ask questions and pry," he indicated he would rather be questioned and lead through the interview.

{¶11} M.B. then admitted to showing E.O. his private area. He stated the incident occurred behind the shed. He also admitted to touching E.O.'s vaginal area. M.B. told Lieutenant Icenhour the first incident occurred at the end of his sixth grade year. He said there was about a "week left of school" before summer, and he touched E.O.'s vagina behind the shed. He admitted the shed was a common place for the incidents as the area was obscure, and "there was a gap."

{¶12} M.B. then further admitted he stuck his fingertip inside of E.O to the "tip of the nail" about a centimeter. He admitted to inserting his fingertip into her vaginal area about four times, and admitted it was about every time he touched her. He stated, she said, "It hurts."

**{¶13}** M.B. described the last incident of sexual encounter with E.O. as the last day of eighth grade. Later in the interview, M.B. altered the day of the encounter to the "last day of seventh grade" (the summer between seventh and eighth grade), when his mom caught him. He said he was about to touch E.O. when his mother came around the shed, because it was "time for dinner."

**{¶14}** M.B. denied ever taking pictures of E.O., and didn't remember taking any videos of her.

*Proceedings*

**{¶15}** As a result of E.O.'s statements to Detective Mager and M.B.'s statements to Lieutenant Icenhour, a complaint was filed in the Ashland County Court of Common Pleas, Juvenile Division, alleging M.B. to be delinquent of Rape, in violation of R.C. 2907.02(A)(1)(b) and 2152.02(F), a felony of the first degree if committed by an adult.

**{¶16}** On December 26, 2014, M.B., through counsel, filed a motion to suppress all the statements made to Lieutenant Icenhour on October 23, 2014 at Ashland High School. The State filed a memorandum in opposition to the motion to suppress on January 8, 2015.

**{¶17}** The trial court conducted a hearing on the motion to suppress on January 14, 2015. M.B. did not testify at the suppression hearing. Via Opinion and Judgment Entry of January 27, 2015, the trial court overruled M.B.'s motion to suppress.

**{¶18}** On February 19, 2015, the State filed an Amended Complaint alleging M.B. to be delinquent of,

Count One: Rape, between March 11, 2011 and October 21, 2014, in violation of R.C. 2907.02(A)(1)(b), and 2152.02(F), Rape, a felony of the first degree if committed by an adult;

Count Two: Rape, between August 1, 2014 and August 31, 2014, in violation of R.C. 2907.02(A)(1)(b) and 2152.02(F), Rape, a felony of the first degree if committed by an adult;

Count Three: Rape, between August 1, 2014 and August 31, 2014, in violation of R.C. 2107.01(A)(1)(b) and 2152.02(F), Rape, a felony of the first degree if committed by an adult;

Count Four: Gross Sexual Imposition, between March 11, 2011 and October 21, 2014, in violation of R.C. 2907.05(A)(4) and 2152.02(F), Gross Sexual Imposition, a felony of the third degree if committed by an adult;

Count Five: Gross Sexual Imposition, between March 11, 2011 and October 21, 2014, in violation of R.C. 2907.05(A)(4) and 2152.02(F), Gross Sexual Imposition, a felony of the third degree if committed by an adult;

Count Six: Gross Sexual Imposition, between March 11, 2011 and October 21, 2014, in violation of R.C. 2907.05(A)(4) and 2152.02(F), Gross Sexual Imposition, a felony of the third degree if committed by an adult.

**{¶19}** On May 27, 2015, the State filed an Evidence Rule 807 Notice regarding the statements E.O. made at Ashland City Schools to Officer Kim Mager. Evidence Rule 807 states out-of-court statements made by a child under twelve describing any sexual act performed on the child are not hearsay if certain factors apply. The State's motion asserted,

In the event the victim states that she cannot testify, refuses to testify, or claims a lack of memory about the events charged, the State intends to introduce testimony by Officer Kim Mager in regards to the victim's statements about the offenses.

While the State certainly does not expect the case to proceed in a manner which requires hearsay testimony, the State is giving notice to opposing counsel as required by the statute for the purposes of efficiency the day of trial.

**{¶20}** The matter proceeded to adjudication on June 8, 2015. Via Judgment Entry of June 9, 2015, the trial court adjudicated M.B. delinquent of Count One, Two and Three, being Rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult. Therefore, the trial court found M.B. a delinquent child pursuant to R.C. 2152.02(F).

**{¶21}** The trial court further found the State proved, beyond a reasonable doubt, all the essential elements of two counts of Gross Sexual Imposition, of Counts Four and Five of the Amended Complaint, in violation of R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult. Accordingly, the trial court adjudicated M.B. a delinquent child as defined in R.C. 2152.02(F) on the bases of having committed two counts of Gross Sexual Imposition, each a third degree felony if committed by an adult.

**{¶22}** The trial court did not find the evidence established, beyond a reasonable doubt, the essential elements of Count Six, Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4); therefore, the trial court dismissed Count Six of the Amended Complaint.

{¶23} The trial court conducted a dispositional hearing on July 9, 2015, and filed a written Judgment Entry of disposition on July 15, 2015. On each count of Rape, the trial court committed M.B. to the custody of the Ohio Department of Youth Services pursuant to R.C. 2152.16(A)(1)(d) for institutionalization in a secure facility for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed his attainment of twenty-one years of age. The trial court ordered the commitments to the custody of ODYS on each count of rape shall be served consecutively.

{¶24} As to each count of Gross Sexual Imposition, the trial court committed M.B. to the custody of ODYS pursuant to R.C. 2152.16(A)(1)(e) for institutionalization in a secure facility for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed his attainment of the age of twenty-one years. The trial court further ordered the commitments to ODYS for the two offenses of gross sexual imposition shall be suspended subject to M.B. successfully completing the requirements regarding his commitment to the custody of ODYS, successfully completing any term of probation or parole if such term is imposed and fully complying with all orders of the trial court.

{¶25} The trial court conducted a classification hearing at the same time as the dispositional hearing, pursuant to the authority as set forth in the case of **In re I.A.,** 140 Ohio St.3d 203, and entered a separate classification order.

{¶26} Via Opinion and Judgment Entry entered July 28, 2015, the trial court classified M.B. a Juvenile Offender Registrant and a Tier III Sex Offender. The trial court

ordered M.B. placed in a sex offender program at the ODYS and ordered he successfully complete the program. The trial court stated,

> The hearing was held at the same time as the dispositional hearing conducted by the Court in this case and was for the purpose of determining whether to enter an Order determining [M.B.] to be a sex offender subject to registration requirements as provided in Sections 2152.83 et seq. of the Ohio Revised Code, as well as Chapter 2950 of the Ohio Revised Code.

**{¶27}** The trial court further found,

> 2. [M.B.] was at least fourteen years of age at the time of the commission of the offenses and may have been fifteen years of age.

> 3. The Court was not required to classify [M.B.] as a Juvenile Offender Registrant under Section 2152.82 of the Ohio Revised Code (he had not been previously adjudicated a delinquent child for sexually oriented offenses.)

> \*\*\*

> The Court has considered all of the evidence, the applicable law, and the arguments of counsel for each party. Based thereon, the Court does issue the following Order pursuant to Section 2152.83(B)(2)(b), Ohio Revised Code:

> 1.) The Court does hereby classify [M.B.] as a Juvenile Offender Registrant and specified that [M.B.] has a duty to comply with Sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Ohio Revised Code.

2.) The Court finds that the offenses of Rape, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, are Tier III sexually oriented offenses as defined by the statute. The Court further recognizes and finds, however, that under present Ohio law *while classification may be mandatory the Tier upon which the juvenile is placed is discretionary* with the Court and the Court has the discretion to classify the juvenile pursuant to whatever Tier the Court determines to be appropriate in this case. The Court finds no basis in the evidence or any of the material received by the Court to classify the juvenile in the present time in any Tier other than as noted above. (Emphasis added.)

3.) The Court does hereby classify [M.B.] a Tier III Sex Offender.

**{¶28}** Appellant appeals, assigning as error:

**{¶29}** "I. THE JUVENILE COURT ERRED WHEN IT OVERRULED M.B.'S MOTION TO SUPPRESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.

**{¶30}** "II. THE JUVENILE COURT VIOLATED M.B.'S RIGHT TO DUE PROCESS WHEN IT ADJUDICATED HIM DELINQUENT, IN THE ABSENCE OF CREDIBLE AND COMPETENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.

**{¶31}** "III. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED M.B. AS A JUVENILE OFFENDER REGISTRANT BECAUSE THE RECORD DID NOT ESTABLISH

THAT HE WAS AGE ELIGIBLE FOR REGISTRATION, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 16, OHIO CONSTITUTION.

**{¶32}** "IV. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED M.B. AS A TIER III JUVENILE OFFENDER REGISTRANT BECAUSE THE CLASSIFICATION PERIOD EXTENDS BEYOND THE AGE JURISDICTION OF THE JUVENILE COURT, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTIONS 9 AND 16, OHIO CONSTITUTION.

**{¶33}** "V. M.B. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTION 10, OHIO CONSTITUTION."

I.

**{¶34}** In the first assignment of error, M.B. maintains the trial court erred in denying his motion to suppress.

**{¶35}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether those findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court's judgment for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d

37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and that it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger*.

**{¶36}** On October 23, 2014, Lieutenant Joel Icenhour went to Ashland High School and made contact with Assistant Principal Jon Walter indicating he had come to the school to interview two juveniles. Assistant Principal Walter offered his office for conducting the interviews. The office was "regular" in size, and had no windows. There was one desk in the office and a chair behind the desk with two additional chairs located away from the desk near one of the doors to the office.

**{¶37}** Walter retrieved M.B. from class, and brought M.B. to Walter's office where Icenhour was waiting. Walter was present throughout the interview in his office, but did not ask questions, per school board policy. The doors to the office were closed, but not locked during the interview. Principal Walter explained to M.B. Lieutenant Icenhour was there to talk to him, he was not under arrest, he was free to leave and he did not have to talk to him.

**{¶38}** At the outset, Lieutenant Icenhour repeated he was there to talk to M.B. M.B. was not under arrest and he was free to leave and did not have to talk. The interview was recorded.

**{¶39}** Lieutenant Icenhour wore plain clothes, a badge, and had weapons on his person. The weapons were not plainly visible, but may have been seen by the juvenile.

**{¶40}** Prior to trial, M.B. moved to suppress the statements made to Lieutenant Icenhour asserting he was not advised of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and his statements were not voluntary. *State v. Arrington*, 14 Ohio App.3d 111 (1984).

**{¶41}** The requirements of *Miranda* are specifically limited to custodial interrogation. Before a court can exclude a statement made by an individual it must first decide whether the individual was in custody and law enforcement officers conducted an interrogation. In *State v. Mason*, 82 Ohio St.3d 144 (1998), the Ohio Supreme Court discussed the issue of what constitutes custodial interrogation. The Court stated, "…the determination as to whether a custodial interrogation has occurred requires an inquiry into how a reasonable man in the suspect's position would have understood his position."

**{¶42}** Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody. It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited. *Oregon v. Mathiason*, 429 U.S. 492 (1977).

**{¶43}** In *JDB v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394 (2011), a thirteen year-old seventh grade student was questioned without being advised of his *Miranda* rights. A uniformed police officer on detail to the school took J.D.B. from his classroom to a closed-door conference room, where police and school administrators questioned him for at least 30 minutes. Before beginning, they did not give him *Miranda* warnings or the opportunity to call his grandmother, his legal guardian, nor tell him he was free to leave

the room. He first denied his involvement, but later confessed after officials urged him to tell the truth and told him about the prospect of juvenile detention.  The United States Supreme Court in remanding the case for a determination of custody, developed a reasonable juvenile standard holding:

> This case presents the question whether the age of a child subjected to police questioning is relevant to the custody analysis of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is beyond dispute that children will often feel bound to submit to police questioning when an adult in the same circumstances would feel free to leave. Seeing no reason for police officers or courts to blind themselves to that commonsense reality, we hold that a child's age properly informs the *Miranda* custody analysis.

**{¶44}**  In *JDB*, the juvenile was thirteen years old and in the seventh grade. Here, M.B. was fifteen years-old and in the ninth grade.  Unlike the juvenile in JDB, M.B. clearly was told Lieutenant Icenhour was only there to talk to him, he was not under arrest, he did not have to talk and was free to leave.  We also note Lieutenant Icenhour was not in uniform as was the officer in JDB.[1]  Accordingly, we find the trial court reasonably concluded a juvenile in M.B's situation would have felt he was not in custody and free to terminate the interview.

---

[1] While of little significance, it was the assistant principal Jon Walter who removed M.B. from his class, not the uniformed officer as in *JDB*.

**{¶45}** M.B. further maintains his statements to Lieutenant Icenhour were not voluntarily made as Lieutenant Icenhour used coercive tactics to induce M.B. into making the statements.

**{¶46}** In *State v. Edwards*, 49 Ohio St.2d 31 (1976), the Ohio Supreme Court addressed the issue of voluntariness of a confession and adopted the "totality of the circumstances" analysis. The Court reaffirmed the test in *In re Watson,* 47 Ohio St.3d 86 (1989), holding,

> In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused, the length, intensity, and frequency of interrogation, and the existence of physical deprivation or inducement.

**{¶47}** Here, considering the totality of the circumstances, the recorded interview demonstrates Lieutenant Icenhour kept a calm demeanor throughout the entire interview, and did not use coercive tactics. Rather, Icenhour asked M.B. if he would like to walk him through what happened or whether he would prefer Icenhour to ask questions and "pry." M.B. responded he would prefer Lieutenant Icenhour to ask questions and lead him through the process. The encounter lasted approximately an hour, and M.B. was treated hospitably.

**{¶48}** We find the trial court did not err in finding M.B. was not in custody and his statements were voluntarily made, without threat or coercion. Accordingly, we find the trial court properly overruled M.B.'s motion to suppress.

**{¶49}** The first assignment of error is overruled.

II.

{¶50} In the second assignment of error, M.B. asserts his adjudication on three counts of rape and two counts of gross sexual imposition was against the manifest weight and sufficiency of the evidence. We agree in part.

{¶51} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). *In re A.W.*, 2013-Ohio-5617, ¶ 15. Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.; see also McDaniel v. Brown,* 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 2010–Ohio–1017, 926 N.E.2d 1239, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 2010–Ohio–2720, 933 N.E.2d 296(5th Dist .), ¶ 68.

{¶52} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St .3d 89, 1997–Ohio–355, 684 N.E.2d 668. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of

proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." *Id.* at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed.1990) at 1594.

**{¶53}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra,* 78 Ohio St.3d at 387, *quoting State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶54}** M.B. maintains there is insufficient evidence to establish he was over the age of thirteen at the time the offenses were alleged to have been committed; therefore he cannot be adjudicated delinquent of statutory rape under the Ohio Supreme Court's holding in *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671.

**{¶55}** M.B.'s date of birth was established at the adjudication herein as September 28, 1999. Accordingly, he was between eleven and fifteen years of age at the times alleged in the complaints.

**{¶56}** E.O. testified at the adjudication hearing. Accordingly, her out-of-court statements made to Officer Mager during the investigation were not admissible at the hearing as hearsay evidence. As set forth in the statement of the Facts and the Case, supra, the State filed an Evidence Rule Notice stating its intent to use the out-of-court statements made by E.O. to Detective Mager should E.O. be unable, unavailable, or unwilling to testify at the adjudication hearing. The trial court confirmed the State did not intend to proceed under the Evidence Rule Notice as E.O. did in fact testify at trial. However, during the testimony of Detective Kim Mager, M.B., through counsel, introduced Exhibit Defense 3, as a prior inconsistent statement made by E.O. Exhibit Defense 3 is a narrative prepared by Detective Mager following her October 23, 2014 interview with E.O. The State used the exhibit to demonstrate E.O. had made prior statements relative to telling her parents of the alleged sexual contact.

**{¶57}** Contained within Exhibit Defense 3 are statements made by E.O. alleging M.B. touched her vaginal area and inserted his fingers inside her vagina on multiple incidents behind the shed on M.B.'s property. However, E.O. did not provide the dates of the incidents. E.O. estimated the incidents began when she was in first grade, about three years ago, putting her at age six. She then said at the time M.B. both touched her vagina on the outside of her clothes and put his hands up her shirt.

**{¶58}** E.O. then described an incident during which S.B., M.B. and C.B.'s mother, witnessed M.B. touching her. She stated the incident occurred "right before school started, she believes in late August, 2014" when she was playing in the backyard." E.O. said M.B. told her to "come here," and while they were trying to "spy" on someone, M.B. was "touching me with his fingers inside me." C.B. was "watching to make sure nobody

saw it." Emily stated at the same time, S.B. appeared behind the shed and saw her with her pants and panties down and M.B. sitting in front of her, and M.B. with his fingers inside her. E.O. knew S.B. saw M.B. with his fingers inside her because "I was right there where she looked and I saw her looking at me." S.B. yelled at M.B., stating, "That's it! You're grounded and you can't play with her anymore!"

{¶59} During her interview with Officer Mager, E.O. did not provide any other specific incidents or dates.

{¶60} At the adjudication hearing, E.O. testified she was now ten years-old and her date of birth is May 9, 2005. She stated she had just finished the fourth grade.

{¶61} She again described the incident with M.B. behind the shed, during which S.B. witnessed M.B. touching her. She described M.B. touching her "bottom" which she said is her vaginal area, and said his fingers went inside, as she could feel it "felt bruised." She said her pants were down. She could not remember the date of the incident. When asked whether it was the last day of summer, she could not remember.

{¶62} She also could not remember the first time the incidents happened with M.B.

{¶63} E.O. then described an incident at Michael and Renee's house (another neighbor) during which she was wearing a yellow skirt. She said she was in "first or second grade" at the time. She related she was sitting on a slide when M.B. touched her underneath her clothes and she felt the same "bruising" feeling.

{¶64} She stated M.B. would threaten to kill something of hers, if she said no. She said it was more than the two times described, but could not recall how often. She said M.B. could not hang out with her "a couple of months" after the incident with S.B., and the incidents kept happening after S.B. witnessed M.B. touching her.

**{¶65}** Detective Joel Icenhour testified at the adjudicatory hearing as to his interview with M.B. He testified M.B. admitted in layers his sexual involvement with E.O., admitting to touching her private areas, to being caught at one point by S.B. getting ready to touch E.O.

**{¶66}** Lieutenant Icenhour testified M.B. admitted the conduct began when he was in sixth grade, at approximately twelve years of age.  He provided two different time frames for the incident when S.B. witnessed the touching.  He said the incident occurred during the summer between seventh and eighth grade, at which point M.B. would have been thirteen years-old, and then he said the incident occurred after eighth grade, when he was fourteen years-old.

**{¶67}** M.B. admitted he digitally penetrated E.O. "about four times." However, there was no evidence as to M.B.'s age at the time.

**{¶68}** M.B. testified at the adjudicatory hearing.  He stated throughout his interview with Lieutenant Icenhour he ceased playing with E.O. in the summer of 2014.

**{¶69}** Appellant was convicted of three counts of rape, in violation of R.C. 2907.02(A)(1)(b) and R.C. 2152.02(F), a felony of the first degree if committed by an adult.

> (A)(1) No person shall engage in sexual conduct with another who is
> not the spouse of the offender or who is the spouse of the offender but is
> living separate and apart from the offender, when any of the following
> applies:
> * * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶70}** In *In re D.B.,* 129 Ohio St.3d 104, 950 N.E.2d 528, 2011-Ohio-2671, the Ohio Supreme Court held,

We note that while we hold that R.C. 2907.02(A)(1)(b) is unconstitutional as applied to a child under the age of 13 who engages in sexual conduct with another child under the age of 13, a child under the age of 13 may be found guilty of rape if additional elements are shown: the offender substantially impairs the other person's judgment or control, R.C. 2907.02(A)(1)(a); the other person's ability to resist or consent is substantially impaired because of a mental or physical condition, R.C. 2907.02(A)(1)(c); or the offender compels the other person to submit by force or threat of force, R.C. 2907.02(A)(2). None of those additional elements was present here.

\*\*\*

R.C. 2907.02(A)(1)(b) prohibits one from engaging in sexual conduct with a person under the age of 13. As applied to offenders who are under the age of 13 themselves, the statute is unconstitutionally vague in violation of the Due Process Clause of the United States Constitution because arbitrary and discriminatory enforcement is encouraged. Application of the statute in this case also violates the Equal Protection Clause of the United States Constitution because only one child was charged with being delinquent, while others similarly situated were not.

{¶71} Here, while E.O. testified M.B. threatened to kill something meaningful to her; the State does not allege E.O submitted out of force exerted by M.B. or the threat of force. Rather, M.B. was convicted of statutory rape(s) based solely on the age of E.O. at the time of the offense(s).

{¶72} Reviewing the evidence as a whole, including E.O.'s statements to Officer Mager on October 23, 2014 at Ashland City Schools (Exhibit Defense 3), M.B.'s statements to Lieutenant Icenhour on October 23, 2014 at Ashland High School, and the testimony presented at the June 8, 2015 Adjudication Hearing, we find the manifest weight and sufficiency of the evidence supports only two counts of statutory rape.

{¶73} The first incident of rape occurred when E.O. was in "first or second grade" or about three years ago. E.O. was in fourth grade at the time of the interview on October 23, 2014, and M.B. was in ninth grade and fifteen years of age. When E.O. was in first grade, M.B. would have been in sixth grade and approximately 12 to 13 years of age. E.O. remembered the incident when she was wearing a yellow skirt. She testified M.B. touched her on the swing set at Michael and Renee's house. Accordingly, we find M.B. could not be adjudicated delinquent of rape for the first count of rape when he himself may have been under the age thirteen at the time of the offense, pursuant to *In re: D.B.*, supra.

{¶74} As to the second count of rape, M.B. admitted in his interview with Lieutenant Icenhour to having been caught by his mother S.B. behind the shed in an act of "almost touching" E.O. He stated the incident occurred on the last day of summer in eighth grade. He later stated the incident occurred between the summer of seventh and eighth grade. In her interview with Officer Mager, E.O. described the same incident as

occurring in August of 2014, on the "last day of summer." She stated S.B. witnessed M.B. touching her, and he had his finger inside her with her pants down. E.O. also testified as to the incident at the adjudicatory hearing.

{¶75} In August of 2014, Appellant was preparing to enter ninth grade, approximately the last day of summer in eighth grade, and he would have been fourteen years of age. E.O. would have been under ten years of age. Therefore, we find M.B. could be adjudicated delinquent on Count Two of Rape.

{¶76} E.O. testified M.B. had touched her other times and M.B. admitted to touching E.O. other times, but we find M.B.'s age at these other times was not conclusively established by the State. The State alleges the third count of rape occurred between August 1, 2014 and August 31, 2014. The State did not meet its burden of proving a third act of rape occurred between these dates. Accordingly, we find the State has not demonstrated M.B. was over the age of thirteen during any additional incidents. Further, E.O. related the "touching" continued after August of 2014, in her interview with Officer Mager; however, at trial she stated she could not remember when the incidents took place and did not establish the time frame for any of the incidents.

{¶77} Based upon the above and pursuant to the Ohio Supreme Court's holding in *In re D.B.,* supra, M.B.'s adjudication of delinquency on Count One is against the manifest weight and sufficiency of the evidence as the evidence demonstrates Appellant was thirteen or under at the time he committed the first count of rape.

{¶78} The evidence demonstrates Appellant committed one count of rape when he was over the age of fourteen. In addition, while both E.O. and M.B. stated there were multiple incidents of touching and digital penetration; however, the State did not prove the

age of M.B. at the time of the other incidents or the dates on which the other acts occurred. Accordingly, Appellant's adjudication on the third count of rape is against the manifest weight and sufficiency of the evidence.

{¶79} We find the evidence supports one count of rape in late August of 2014, during which S.B. witnessed M.B. touching E.O. behind the shed. M.B.'s adjudication on one count of rape in Count Two, in violation of R.C. 2907.02(A)(1)(b), is affirmed. Appellant's adjudication on Count One Rape and Count Three Rape are reversed.

{¶80} Appellant was further convicted of two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) and R.C. 2152.02(F), a felony of the third degree if committed by an adult.

{¶81} The statute reads,

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

***

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶82} In *In re T.A.,* 2d Dist. Nos.2011–CA–28 and 2011–CA–35, 2012–Ohio–3174, the Second District addressed whether *In re D.B.*, supra, should be applied to violations of R.C. 2907.05(A)(4),

T.A. argues that the reasoning set forth in *In re D.B., supra,* should be applied to violations of R.C. 2907.05(A)(4), because both he and the

other child involved were under the age of thirteen. He contends that, as with the Statutory Rape statute, the Gross Sexual Imposition statute fails to provide guidelines for differentiating between an offender and a victim. The State argues that "R.C. 2907.05(A)(4), unlike R.C. 2907.02(A)(1)(b), does differentiate between victims and offenders in situations where both actors are children under the age of thirteen years."

The State notes that the Statutory Rape statute prohibits sexual conduct, which is a strict-liability offense because it does not require a specific mens rea, while the Gross Sexual Imposition statute prohibits sexual contact, which requires an offender to act purposefully. *See State v. Dunlap,* 129 Ohio St.3d 461, 2011–Ohio–4111, 953 N.E.2d 816, ¶ 26. Pursuant to R.C. 2901.22(A), a person acts purposefully when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

We agree with the State. Statutory Rape only involves the offender engaging in a proscribed act, regardless of his intent. Gross Sexual Imposition involves both a proscribed act and a purpose—the purpose to cause sexual arousal or gratification. This permits ready differentiation between victim and offender. As the State notes, a two-year-old is not capable of forming the mens rea necessary to commit the offense.

{¶83} Similarly, in *In re KA,* 8th Dist. No. 98924, 99144, 2013-Ohio-2997, the Eighth District held,

> Thus, although both the statutory rape statute and gross sexual imposition statute involve children under the age of 13, they require a different mens rea. Statutory rape is a strict-liability offense because it does not require a mens rea. Statutory rape only requires engaging in a proscribed act. Gross sexual imposition pursuant to R.C. 2907.05(A)(4), however, requires the offender to engage in certain contact with the "purpose" to cause sexual arousal or gratification. The mens rea of "purpose" to cause sexual arousal or gratification provides a way to differentiate the victim from the offender.
>
> There is also no arbitrary and discriminatory enforcement because only K.A. had the purpose of sexually arousing or gratifying either person. Therefore, R.C. 2907.05(A)(4) is not impermissibly vague nor a violation of equal protection. *See In the Matter of: T.A.,* 2d Dist. Nos.2011–CA–28 and 2011–CA–35, 2012–Ohio–3174.

{¶84} We find M.B.'s adjudication on both counts of gross sexual imposition, Counts Four and Five, were not against the manifest weight nor the sufficiency of the evidence because the evidence demonstrates M.B. engaged in sexual contact with E.O. when she was under thirteen years of age on two separate occasions.

{¶85}   The second assignment of error is sustained, in part, and overruled, in part.

III.

**{¶86}**    In the third assignment of error, M.B. argues the trial court erred in classifying M.B. a Juvenile Offender Registrant/Tier III Sex Offender as the record does not establish he is age eligible for registration, and the trial court did not exercise discretion in classifying M.B.

**{¶87}**    Via Judgment Entry of July 28, 2015, the trial court classified Appellant a Juvenile Offender Registrant ("JOR") and a Tier III sex offender. The trial court considered the evidence presented and took judicial notice of the proceedings in the case, finding the acts for which Appellant was adjudicated were all sexually oriented offenses and were committed after January 1, 2002. The trial court found M.B. was at least fourteen years of age at the time of the commission of the offenses. The court further found it was not required to classify M.B. as a Juvenile Offender Registrant under Section 2152.82 as M.B. had not been previously adjudicated a delinquent child for a sexually oriented offense.[2]

**{¶88}**    The trial court conducted a hearing pursuant to R.C. 2152.83. The trial court found the victim was extremely young, M.B. showed no genuine remorse, there is a continued risk to public safety and the public has an interest in M.B. being classified, and M.B. has demonstrated an unwillingness or reluctance to participate in any treatment program, maintaining he has done nothing wrong. The trial court considered all of the evidence, and classified M.B. a Juvenile Offender Registrant. The trial court stated,

---

[2] R.C. 2152.82 requires a trial court to mandatorily classify a child a juvenile offender registrant if the child previously was adjudicated a delinquent child for committing any sexually oriented offense or child – victim oriented offense.  Here, M.B. had not had any prior history of offenses.

2) The Court finds that the offenses of Rape, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, are Tier III sexually oriented offenses as defined by statute. The Court further recognizes and finds, however, that under present Ohio law while *classification may be mandatory* the Tier upon which the juvenile is placed is discretionary with the Court and the Court has the discretion to classify the juvenile pursuant to whatever Tier the Court determines to be appropriate in this case. The Court finds no basis in the evidence or any of the material received by the Court to classify the juvenile at the present time in any Tier other than as noted above.

3) The Court does herby classify M.B. as a Tier III Sex Offender.

4) The Court further finds that community notifications are discretionary in this case. Having considered all facts and circumstances, the Court does not require community notifications.

(Emphasis added.)

**{¶89}**     In classifying juveniles as sex offenders, the juvenile court has discretion to determine which tier level to apply. *In re D.P.,* 11th Dist. No. 2008–L–186, 2009-Ohio-6149, 2009 WL 4021187, ¶ 18, *rev'd on other grounds* ("the statutes vest a juvenile court with full discretion to determine whether to classify a delinquent child as a Tier I, Tier II, or Tier III offender") (citation omitted.)

**{¶90}**     The Eleventh District Court of Appeals in *In re D.P.,* supra, explained Senate Bill 10 as it relates to juvenile offenders,

Senate Bill 10, as in earlier versions of Ohio's sex offender registration statutes, applies to both adult sex offenders and juvenile sex

offenders. See R.C. 2950.01(B)(1) ("sex offender" includes a person who is "adjudicated a delinquent child for committing, or has been adjudicated a delinquent child for committing any sexually oriented offense"). The classification scheme for juvenile sex offenders is governed by both R.C. Chapter 2152 and R.C. Chapter 2950. As with the earlier version of the law, Senate Bill 10 requires the juvenile court to engage in a two-step process. See *In re C.A.,* 2d Dist. No. 23022, 2009-Ohio-3303, ¶ 37.

First, the court must determine whether the juvenile sex offender should be designated as a juvenile offender registrant ("JOR") and, therefore, subject to classification and the attendant registration requirements. For certain juvenile sex offenders, the JOR designation is mandatory. See R.C. 2152.82 (applicable to juvenile sex offenders 14 or older who had previously committed a sexually oriented offense); R.C. 2152.83(A)(1) (applicable to juvenile offenders 16 or older); and R.C. 2152.86 (applicable to "serious youthful offenders" who are additionally designated as "public registry-qualified juvenile offender registrant"). *For juvenile offenders who are 14 or 15 without prior adjudication for a sexually oriented offense and who do not fall within R.C. 2152.86, the trial court has the discretion to determine whether the juvenile offender should be considered a JOR therefore subject to the registration requirement. See R.C. 2152.83(B)(1) and In re C.A.* at ¶ 37.

Second, the statutory scheme for the juvenile sex offenders requires the juvenile court to conduct a hearing to determine the tier in which to classify the juvenile offender. R.C. 2152.831(A); R.C. 2152.83(A)(2). Unlike the adult

sex offenders, who are classified based on the offense committed, the tiers for the juveniles are determined somewhat differently. For instance, a Tier III sex offender is defined, in part, as a "sex offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 of the Revised Code, classifies a tier III sex offender/child-victim offender *relative to the offense.*" (Emphasis added in original.) R.C. 2950.01(G)(3). Unlike the automatic classification of the adult sex offenders, the juvenile court is authorized to exercise its discretion at the classification hearing. Our interpretation of the statute as vesting the juvenile court with discretion in classifying the juvenile offenders is shared by several other appellate districts. See *In re G.E.S.,* 9th Dist. No. 24079, 2008-Ohio-4076, ¶ 37 (the statutes vest a juvenile court with full discretion to determine whether to classify a delinquent child as a Tier I, Tier II, or Tier III offender); *In re S.R.P.,* 12th Dist. No. CA2007-11-027, 2009-Ohio-11, ¶ 43 (the appellate court read Senate Bill 10 as giving juvenile courts the discretion to determine which tier level to assign to a delinquent child; regardless of the sexually oriented offense that the child committed, Senate Bill 10 does not forbid a juvenile court from taking into consideration multiple factors, including a reduced likelihood of recidivism); *In re Adrian R.,* 5th Dist. No. 08-CA-17, 2008-Ohio-6581, ¶ 17; *In re J.M.,* 8th Dist. No. 91800, 2009-Ohio-2880, ¶ 11; *In re C.A.* at ¶ 68

(Emphasis added.)

**{¶91}** Upon review, we find the trial court may have misunderstood its discretion in classifying M.B.[3] The trial court properly conducted a hearing following disposition exercising its discretion to classify M.B. a juvenile offender registrant. The trial court considered M.B.'s lack of remorse, the age of the victim, and treatment options in deciding against a lower level tier classification. These factors would support the trial court's classification of M.B. as a JOR/Tier III sex offender.

**{¶92}** However, the trial court's Judgment Entry states "The Court further recognizes and finds, however, that under Ohio law while classification may be mandatory, the Tier upon which the juvenile is placed is discretionary with the Court and the Court…" The trial court seemed to look to the offense of Rape as a Tier III offense. As discussed supra, M.B. was 14 years old at the time of the rape offense and did not have a prior adjudication for a sexually oriented offense; therefore, the trial court had discretion as to whether to classify M.B. a Juvenile Offender Registrant subject to registration. The trial court erred in finding classification mandatory. See, *In Re: D.S.*, 5th Dist. 13 CA 58, 2014 Ohio 867.

**{¶93}** The third assignment of error is sustained.

IV.

**{¶94}** In the fourth assignment of error, M.B. maintains the trial court's classification of M.B. as a Tier III Juvenile Offender Registrant and Tier III sex offender violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

---

[3] We recognize it is possible the trial court merely misspoke.

**{¶95}** Specifically, M.B. argues the juvenile courts have exclusive jurisdiction over children who are alleged delinquent pursuant to R.C. 2151.239(A)(1). However, the juvenile court's jurisdiction ends at the child's twenty-first birthday. A narrow exception exists for youth subject to Ohio's juvenile offender registration and notification statutes. R.C. 2151.23(A)(15). R.C. Sections 2152.83(E), 2152.84 and 2152.85, when read together, grant juvenile courts jurisdiction over adults, who were formerly delinquent children, where jurisdiction would not otherwise exist. M.B. maintains this is contrary to the purposes of juvenile delinquency dispositions.

**{¶96}** In *In re D.S.*, 5th Dist. No. 13-CA-58, 2014-Ohio-867, appeal allowed, 2014-Ohio-2725, ¶¶ 3-4, 139 Ohio St. 3d 1428, 11 N.E.3d 284, and aff'd, 2016-Ohio-1027, ¶¶ 3-4, the juvenile court's disposition entry did not include a determination as to how old D.S. was at the time the offenses were committed. The December 8, 2010 disposition entry stated, "classification as a juvenile sex offender registrant is deferred or delayed pending efforts at rehabilitation while committed to ODYS." Following, D.S.'s release from ODYS, the trial court conducted a classification hearing. The trial court considered evidence as to the age of D.S. at the time the offenses were committed. The court determined D.S. was fourteen years of age at the time at least one of the offenses was committed; therefore, D .S. was subject to classification. Following the classification hearing, via Judgment Entry of June 24, 2013, the trial court overruled Appellant's motion to dismiss and the juvenile court classified D.S. a Tier II Juvenile Sex Offender Registrant with a duty to comply with registration requirements every 180 days for 20 years.

**{¶97}** This Court held,

The statute, therefore, specifically, continues the jurisdiction of the juvenile court to classify the juvenile beyond their twenty-first birthday. The legislature retains the power to define the jurisdiction of the courts as long as powers inherently reserved for the judiciary are not infringed upon. *Seventh Urban, Inc. v. University Circle,* (1981) 67 Ohio St.2d 19.

In the case at bar, the classification of D.S. as a juvenile offender registrant was not mandatory under the circumstances of this case because D.S. was fourteen years old at the time of at least one offense, did not have a prior adjudication for a sexually oriented offense, and had not been labeled a serious youthful offender. See R.C. 2152.83(B)(1), 2152.82, and 2152.86. As classification was not mandated by statute, the juvenile court was given the broad discretion to determine whether D.S. should be classified as a juvenile offender registrant and under which tier D.S. should be placed.

**{¶98}** Recently, this Court addressed the issues raised herein in *In Re D.R., a Minor Child,* 5th Dist No. Knox 13CA27, 2014–Ohio–588, holding:

Laws limiting rights, other than fundamental rights, are constitutional with respect to substantive due process and equal protection if the laws are rationally related to a legitimate goal of government. *State v. Thompkins* (1996), 75 Ohio St.3d 558.

" * * *

In the case at bar, we cannot say that the classification authorized by R.C. 2152.83(B) is irrational. Pursuant to R.C. 2152.83(B), the juvenile court judge retains discretion to deal individually with juvenile offenders. *In*

*Re C.P.,* (citation omitted). 'Fundamental fairness requires that the judge decide the appropriateness of any such penalty.' *Id.* at ¶ 78. Although imposition of R.C. 2152.83(B) registration requirements may be punitive, they may help achieve the goal of rehabilitation by motivating the juvenile to comply with treatment in order to reduce or eliminate the registration requirement. *In Re I.A,* 2nd Dist. Montgomery No. 25078, 2012 Ohio 4973.

Accordingly, D.R. has failed to show that a JOR classification that extends beyond a child's twenty-first birthday violates either the United States or Ohio constitutional prohibitions against cruel and unusual punishment or the requirements of due process.***

**{¶99}** Pursuant to this Court's previous holding in *In re D.S.*, supra, M.B.'s fourth assignment of error is overruled.

V.

**{¶100}** In the fifth assignment of error, M.B. maintains he was denied the effective assistance of trial counsel where his trial counsel failed to raise objections to the insufficiency of the evidence presented at trial pursuant to Juvenile Rule 29, and to object to the constitutionality of his JOR and Tier III sex offender registration.

**{¶101}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838,

122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶102} In determining whether counsel's representation fell below an objective

standard of reasonableness, judicial scrutiny of counsel's performance must be highly

deferential. *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties

inherent in determining whether effective assistance of counsel was rendered in any given

case, a strong presumption exists that counsel's conduct fell within the wide range of

reasonable, professional assistance. Id.

{¶103} The United States Supreme Court and the Ohio Supreme Court have held

that a reviewing court "need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies." *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373, quoting *Strickland,* 466 U.S.

at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶104} "When counsel's alleged ineffectiveness involves the failure to pursue a

motion or legal defense, this actual prejudice prong of *Strickland* breaks down into two

components. First, the defendant must show that the motion or defense 'is meritorious,'

and, second, the defendant must show that there is a reasonable probability that the

outcome would have been different if the motion had been granted or the defense

pursued." *In re Adrian R.*, 5th Dist. No. 08–CA–17, 2008-Ohio-6581, 2008 WL 5207301,

at ¶ 23, citing *Kimmelman v. Morrison* (1986), 477 U.S. 365, 375, 106 S.Ct. 2574, 91

L.Ed.2d 305.

**{¶105}** Based upon our analysis and disposition of M.B.'s second assignment of error, we find M.B.'s arguments regarding failure of counsel to challenge the sufficiency and/or weight of the evidence moot.

**{¶106}** As to M.B.'s argument with regard to his classification as a JOR/Tier III sex offender, in accordance with our analysis and disposition of the third assignment of error, we likewise find M.B.'s argument in regard thereto moot.

**{¶107}** The fifth assignment of error is overruled.

**{¶108}** The judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed, in part, reversed, in part, and remanded for resentencing.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur