[Cite as *State v. Burge*, 2017-Ohio-7862.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2016CA00217 |
| CHARLES BURGE | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Common Pleas Court, Case No. 2015CR1944 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 26, 2017 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| JOHN D. FERRERO,<br>Prosecuting Attorney,<br>Stark County, Ohio | ANTHONY T. KAPLANIS<br>701 Courtyard Centre<br>116 Cleveland Avenue, NW<br>Canton, Ohio 44702 |
| By: KRISTINE W. BEARD<br>Assistant Prosecuting Attorney<br>Appellate Section<br>110 Central Plaza, South – Suite 510<br>Canton, Ohio 44702 | |

*Hoffman, J.*

{¶1} Defendant-appellant Charles Burge appeals the judgment entered by the Stark County Common Pleas Court convicting him of two counts of rape (R.C. 2907.02(A)(1)(b)) and one count of gross sexual imposition (R.C. 2907.05(A)(4)) and sentencing him to an aggregate term of life imprisonment. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant is the natural father of the victim, R.B. During the time of the incidents, R.B. was between the ages of nine and twelve, and resided with Appellant, her mother, and her half-sister.

{¶3} When R.B. was around nine or ten years old, Appellant came into her bedroom prior to a family cookout, and tickled her to wake her up. He put his hands down her shirt and grabbed her breasts. Over time the sexual advances progressed.

{¶4} R.B. and Appellant frequently rode bikes together. On one bicycle ride, Appellant led R.B. to a grassy patch off the trail and began to kiss her. Another time during a camping trip, Appellant came into the tent, kissed R.B., played with her breasts, and "fingered" her. One night while in the basement, Appellant sat R.B. on his lap. He began to kiss and "finger" R.B. R.B.'s half sister came into the room, but R.B. was not sure if she saw anything. During a three year period, Appellant asked R.B. to give him "hand jobs" and oral sex, and he rubbed his penis on her thigh. He fondled her breasts, touched her vaginal area with his mouth and fingers, digitally penetrated her vagina, and kissed her breasts.

**{¶5}** When the incidents first began, R.B. asked a friend if it was right for your dad to touch you. Her friend said no, and was upset by the conversation. Police responded to the home and questioned R.B. She denied that anything was occurring because she was afraid that if she disclosed the sexual abuse, something bad would happen to her mom.

**{¶6}** R.B. loved her father, and he told her if she disclosed what happened, she would never see him again. As the abuse progressed, Appellant became mean. During the last incident of sexual abuse, R.B. laid on top of Appellant and performed oral sex on him. He ejaculated in her mouth, which caused her to become frightened of pregnancy.

**{¶7}** R.B. disclosed the abuse to her cousins on August 31, 2014. They encouraged her to call her mother. After speaking to R.B., her mother confronted Appellant and ordered him to leave the house. He left and did not return.

**{¶8}** As a result of the disclosure, the allegations were investigated by the police and the Stark County Department of Job and Family Services (JFS). Generally when an allegation of this nature is made, the child is taken to the Children's Network for a forensic interview. The interview is watched live by medical professionals to reduce the number of interviews of the child. However, because the perpetrator lived in the home and the report was made on Labor Day weekend, the case was handled as an emergency case and Pamela Spencer, a caseworker with JFS, interviewed R.B. at her cousin's home. R.B. was then referred to Akron Children's Hospital for a medical examination, and to Northeast Ohio Behavioral Health for a sex abuse evaluation.

**{¶9}** Alyssa Edgein, a nurse practitioner with Akron Children's Hospital, conducted the medical examination. She reviewed Spencer's notes to obtain an initial

medical history and guide the focus of her exam. She also interviewed R.B. R.B. noted physical symptoms including vaginal burning, vaginal pain, itching, self-mutilation, and nightmares.

**{¶10}** Carry Schnirring, a psychological assistant at Northeast Ohio Behavioral health, conducted a sexual abuse assessment and a trauma evaluation of R.B. During their conversations, R.B. became upset and sobbed. R.B. disclosed that she had flashbacks about the sexual incidents, during which she felt dizzy and queasy. She told Schnirring that she felt she was partly to blame because she said yes to Appellant's requests for sexual behavior, even though she was very young at the time. Schnirring diagnosed R.B. with post traumatic stress disorder.

**{¶11}** Det. Joseph Hill of the Navarre Police Department interviewed Appellant, who denied all allegations, but admitted to being with R.B. on the bike trail and the camping trip. Hill collected a Disney blanket which had been on R.B.'s bed, but it tested negative for the presence of semen.

**{¶12}** Appellant was indicted by the Stark County Grand Jury for two counts of rape (one count for digital penetration, one count for oral sex) and for one count of gross sexual imposition, the victim of the offense being less than thirteen years of age at the time of the offenses.

**{¶13}** Appellant filed a motion in limine prior to trial, moving the court to exclude statements made by the victim during the initial interview with Pamela Spencer pursuant to *State v. Arnold,* 126 Ohio St. 3d 290, 933 N.E.2d 775, 2010-Ohio-2742. Appellant also argued the admission of the victim's statements through multiple witnesses would be prejudicially cumulative.

**{¶14}** Following an evidentiary hearing, the State agreed to limit the testimony of Pamela Spencer to her investigative actions, and to not elicit her testimony concerning R.B.'s statements to her. The court ruled from the bench Schnirring could only testify to statements she received from the child for purposes of medical treatment. The court's ruling was not clear as to whether Edgein could testify concerning the contents of Spencer's notes.

**{¶15}** The case proceeded to jury trial in the Stark County Common Pleas Court. Appellant was convicted as charged, and ordered to serve a life sentence of incarceration on each count of rape and an eighteen month sentence for gross sexual imposition, to be served concurrently for an aggregate term of life imprisonment. He was found to be a Tier III sex offender. It is from this entry Appellant prosecutes this appeal, assigning four errors:

**{¶16}** "I.  APPELLANT WAS DENIED A FAIR TRIAL BY THE TRIAL COURT PERMITTING THE STATE TO ALLOW MULTIPLE WITNESSES TO TESTIFY ABOUT THE SAME MATERIAL THEREBY BOLSTERING THE ALLEGED VICTIM'S CREDIBILITY AND ALSO IN VIOLATION OF THE HEARSAY RULES.

**{¶17}** "II.  APPELLANT WAS DENIED A FAIR TRIAL WHEN THE COURT PERMITTED TESTIMONY THAT WENT BEYOND ANY HEARSAY EXCEPTION.

**{¶18}** "III.  THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S CHALLENGE FOR CAUSE OF JUROR 104 THEREBY DENYING APPELLANT A FAIR TRIAL.

**{¶19}** "IV.  THE TRIAL COURT'S FINDING OF GUILTY OF RAPE AND GROSS SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

**{¶20}** In his first assignment of error, Appellant first argues the court erred in admitting the testimony of Alissa Edgein, the nurse practitioner who conducted the medical examination of R.B., concerning R.B.'s statements to Pamela Spencer, as contained in Spencer's notes.  He argues Edgein was then permitted to testify as to her own conversation with R.B., which was unfairly cumulative evidence of the victim's statements, and offered solely to bolster the credibility of R.B.  He also argues the court erred in allowing Carrie Schnirring to testify as to the consistency of R.B.'s statements, and he was unfairly prejudiced by Schnirring's cumulative recounting of the graphic details of the alleged acts of sexual abuse.

**{¶21}** At trial, the prosecutor asked Edgein what history she obtained from Pam Spencer's interview of R.B. that was pertinent to her diagnosis and treatment.  Appellant's objection was overruled.  Tr.(II) 21.  Edgein then testified concerning R.B.'s names for various body parts and her description of their functions, and to details of specific sexual acts as reported to Spencer by R.B., contained within Spencer's report.  Tr.(II) 21-24.  She went on to testify as to how these details assisted her in her medical examination and treatment of R.B.

**{¶22}** " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C).  Pursuant to Evid. R. 802, "Hearsay is not admissible except

as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

**{¶23}** Evid. R. 803(4) provides an exception to the hearsay rule for "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

**{¶24}** Pamela Spencer testified at trial normally, the forensic interview of a child victim is conducted at the advocacy center, where it is viewed live by other professionals, including medical staff and mental health personnel. In the instant case, Spencer conducted the forensic interview in the field at R.B.'s cousin's home due to the emergency nature of the allegations. She testified the interview was a fact-finding interview, and resulted in putting a safety plan in place so R.B. would have no contact with Appellant, and a referral to Northeast Behavioral Health. She further testified R.B. was seen by medical professionals at Akron Children's Hospital.

**{¶25}** The Ohio Supreme Court has recognized the dual role of the forensic interviewer in a child advocacy center:

Child-advocacy centers are unique. Multidisciplinary teams cooperate so that the child is interviewed only once and will not have to retell the story multiple times. Most members of the team retain their

autonomy. Neither police officers nor medical personnel become agents of the other. However, to ensure that the child victim goes through only one interview, the interviewer must elicit as much information from the child as possible in a single interview and must gather the information needed by each team member. Thus, the interview serves dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim. The interviewer acts as an agent of each member of the multidisciplinary team.

*State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33 (2010).

**{¶26}** In the instant case, the interview was conducted not in a child advocacy center but at R.B.'s cousin's home. The testimony of Spencer did not reflect she was eliciting information necessary for the medical diagnosis and treatment of R.B. The focus at the time of the emergency interview with R.B. was the safety of the victim. Although the statements were used by Edgein for purposes of medical diagnosis and treatment, the statements were not given for purposes of medical diagnosis and treatment as defined by Evid. R. 803(4). In fact, the evidence establishes Edgein conducted her own interview of R.B. during her medical examination.

**{¶27}** Further, the statements of R.B. as admitted through the testimony of Edgein from Spencer's notes are double hearsay. "Hearsay included within hearsay is not

excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Evid. R. 805.

**{¶28}** In *State v. Cavinee,* 5th Dist. Licking No. 03-CA-32, 2003-Ohio-6293, the appellant on cross-examination attempt to have a detective testify concerning statements the victim made during a medical examination.   He attempted to admit the statements pursuant to Evid. R. 803(4), as statements made for medical diagnosis or treatment.  On appeal he assigned as error the court's refusal to allow the detective to testify as to the victim's statements included in the medical report.  We found the statements inadmissible as double hearsay:

> Evid. R. 803(6) requires that an individual who testifies to the contents of a business record must be a custodian or other qualified witness with knowledge of the document or record, and that the documents are kept in the course of regularly conducted business activity. Detective Slayman was not qualified to testify concerning the record-keeping practices of McCleery's business. As there is no hearsay exception under which the report would qualify, the court did not err in excluding it from evidence.

*Id.* at ¶12.

**{¶29}** Although Spencer testified in the instant case, the State did not attempt to qualify her notes as an exception to the hearsay rule under any of the exceptions set forth in Evid. R. 803, nor was Edgein able to qualify the notes under either the business record

or public record (Evid. R. 803(8)) exceptions set forth in Evid. R. 803, as she is not qualified to testify to the record-keeping practices of Spencer's office. Therefore, even if R.B.'s statements included in Spencer's notes were given for purposes of medical diagnosis or treatment, the notes were inadmissible hearsay.

**{¶30}** However, where a declarant testifies and is examined on the same matters as contained in impermissible hearsay statements, and where admission is essentially cumulative, such admission is harmless. *State v. Tomlinson*, 33 Ohio App.3d 278, 281, 515 N.E.2d 963, 967 (12th Dist. Warren1986). R.B. testified concerning the same sexual acts contained within Spencer's notes, and thus the admission of her statements to Spencer through Edgein's testimony was harmless.

**{¶31}** Appellant next argues the court erred in allowing Edgein to testify as to her own interview of R.B., as such testimony was unfairly cumulative and prejudicial, and served to bolster the credibility of the victim. Appellant did not object to Edgein's testimony concerning her interview of R.B., and we therefore must find plain error to reverse. In order to prevail under a plain error analysis, Appellant bears the burden of demonstrating the outcome clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

**{¶32}** Evid. R. 403(B) governs the admissibility of cumulative evidence, stating, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

**{¶33}** Edgein's testimony concerning her own interview of R.B. resulted in cumulative evidence concerning the details of the offense, but appellant has not demonstrated plain error in its admission. Her testimony concerning her interview of R.B. was probative as to her medical diagnosis of R.B. Appellant has not demonstrated that in the absence of the cumulative testimony concerning R.B.'s allegations of sexual abuse, the outcome of the trial clearly would have been different. Further, while Appellant argues Edgein's testimony served to bolster the credibility of R.B., expert testimony which bolsters a child's credibility is admissible. See *State v. Stowers,* 81 Ohio St. 3d 260, 262, 690 N.E.2d 881 (1988).

**{¶34}** Appellant argues Carrie Schnirring was permitted to testify concerning the consistency of R.B.'s statements to Spencer, Edgein, and herself. This contention is not demonstrated by the record. Appellant directs us to Tr.(II), page 73 in support of his claim, where Schnirring testified as follows:

> Q. And in addition to meeting with [R.B.'s mother], you also reviewed notes from Pamela Spencer, the CPS worker assigned to the case?
>
> A. Yes, I did.
>
> Q. And, and you also reviewed the medical records generated by Alissa Edgein?
>
> A. That's correct.
>
> Q. And those were consistent with what you learned from mom *regarding the mental health issues* at the time?
>
> A. That's correct.

Tr. (II) 73, emphasis added.

**{¶35}** Contra to Appellant's argument, Schnirring did not testify the victim's statements remained consistent, but rather she testified the mental health concerns raised by R.B.'s mother, by Spencer, and by Edgein were consistent.

**{¶36}** Finally, Appellant argues Schnirring should not have been permitted to testify to the details of what R.B. told her during her sessions with R.B. at Northeast Behavioral Health. He argues these statements were unfairly prejudicial and cumulative, particularly due to the graphic nature of the sexual abuse allegations.

**{¶37}** Evid. R. 403 states:

(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

**{¶38}** Again, Appellant failed to object to Schnirring's testimony concerning what R.B. told her, and we must find plain error to reverse. Her testimony was probative of the mental health issues suffered by R.B. and her diagnosis of post traumatic stress disorder. Unfortunately, the details of sexual abuse of a child are not pleasant, but the recounting

of the details was probative concerning Schnirring's diagnosis and recommended treatment plan, and the probative value of her testimony was not substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence. Appellant has not demonstrated plain error in the admission of her testimony.

**{¶39}** The first assignment of error is overruled.

II.

**{¶40}** In his second assignment of error, Appellant argues the court erred in admitting out-of-court statements through the testimony of Edgein that were testimonial in nature, citing *Arnold, supra.* He specifically argues R.B.'s out-of-court statements regarding where the abuse occurred, and that Appellant talked to R.B. about having sexual intercourse on her sixteenth birthday were not for purposes of medical diagnosis and treatment and therefore inadmissible pursuant to *Arnold.*

**{¶41}** Appellant's reliance on *Arnold* is misplaced. In *Arnold,* the Ohio Supreme Court held statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial in nature, and inadmissible pursuant to the Confrontation Clause where the declarant is unavailable for cross-examination. 126 Ohio St. 3d 290, at paragraph one of the syllabus. In the instant case, R.B. testified and was available for cross-examination; therefore, *Arnold* does not apply and the Confrontation Clause was not violated by admission of these statements.

**{¶42}** The second assignment of error is overruled.

III.

**{¶43}** In his third assignment of error, Appellant argues the court erred in overruling his challenge for cause of Juror No. 104.

**{¶44}** The standard of review concerning whether a prospective juror should be disqualified for cause is abuse of discretion.  *Westfall v. Aultman Hosp.*, 5th Dist. Stark No. 2015CA00223, 2017-Ohio-1250, ¶ 54, citing *Stoner v. Stires*, 5th Dist. Stark No. 94–CA–290, 1995 WL 507648,  (Apr. 24, 1995). Pursuant to this standard, we will reverse the trial court's decision only upon finding the trial court acted arbitrarily, unreasonably or unconscionably. *Id.* If a prospective juror has been challenged for cause, the trial court should excuse the juror if the court has any doubt as to the juror's being entirely unbiased. R.C. 2313.17(D).

**{¶45}** Prior to trial, the jurors were provided with a written questionnaire concerning sexual conduct.  Based on her written response, Juror 104 was asked to approach the bench for further questioning.  The juror stated her grandfather had been accused of sexually assaulting her cousins, who ranged in age from seven to ten years old.  The juror herself had not been a victim of sexual abuse.  The juror stated she wanted to be fair, but "being a child it's difficult."  Tr. (I) 152.  She stated, "I mean the – do kids lie?  Yes.  About this?  I don't – I – it's hard for me to –"  Tr. (I) 152.  The court observed it is very difficult being a juror, especially in a case like this.  The court then asked if the juror could make a decision based on the evidence and the law, and not allow these other things to interfere with the decision.  The juror responded, "Yes, I can do that." Tr. (I) 153.

**{¶46}** Upon questioning by the prosecutor, the juror stated the events occurred over twenty years ago, and she would be able to judge Appellant fairly and impartially. The juror was then questioned by counsel for the defense:

Ms. Bible:  I guess based on your experience with your family members I mean do you feel it's more likely that you're going to be more sympathetic towards the victim or more likely to believe the victim just because of the nature of the charges, the allegations?

Juror #104:  Being a child I have to say yes.

Ms. Bible:  Okay, because she's a child.

Juror #104:  Just because of that I mean, but I can listen to all of the evidence and you know.

Ms. Bible:  Okay.

The Court:  I, I – you're saying that given the fact is that because of what's happened to you or just in general feeling?

Juror #104:  I just think everybody would have sympathy for a child, but you have to hear the evidence and see if it's actually happened.

Tr. (I) 154.

**{¶47}** The trial court overruled the challenge for cause, finding the incident was "way in the past relative to cousins."  Tr. (I) 156.  The court concluded having reviewed her answers and her demeanor, the court would not grant a challenge for cause.

**{¶48}** We find the trial court did not abuse its discretion in overruling Appellant's challenge for cause.  The court specifically referred to the juror's demeanor, which we are not in a position to review on appeal.  The juror did not give any indication the past allegations in her family would affect her ability to decide the instant case based on the

evidence presented at trial. While she did express sympathy for the victim because the victim was a child, sympathy and partiality are not necessarily the same, and she indicated several times she could listen to the evidence and make a decision based on the evidence presented during trial.

{¶49} The third assignment of error is overruled.

IV.

{¶50} In his fourth assignment of error, Appellant argues the verdicts finding him guilty of two counts of rape and one count of gross sexual imposition are against the manifest weight and sufficiency of the evidence.

{¶51} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶52} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶53} Appellant was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(b):

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶54} R.C. 2907.01(A) defines sexual conduct as follows:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶55} Appellant was also convicted of one count of gross sexual imposition in violation of R.C. 2907.05(A)(4):

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have

sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶56}** Sexual contact is defined by R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶57}** R.B. testified Appellant put his hand up her shirt and grabbed her breasts when she was nine years old. She testified during a camping trip, Appellant came into her tent, kissed her, "fingered" her, and played with her breasts. She testified when she was between the ages of nine and twelve, he performed oral sex on her, and she performed oral sex on him. She testified to digital penetration of her vagina by Appellant. She became scared and reported the sexual abuse after an incident in which he ejaculated in his mouth. Her testimony alone was sufficient, if believed by the jury, to support the convictions of two counts of rape and one count of gross sexual imposition.

**{¶58}** Appellant argues there were no physical findings to substantiate the abuse. However, Alissa Edgein testified the last incident occurred four to six weeks before R.B.'s medical examination, and genital wounds heal within 72 hours to four days. Edgein testified physical findings are present in only around 7% of patients.

**{¶59}** Appellant also argues the Disney blanket submitted for testing was negative for the presence of semen, but Det. Hill testified he did not know if the blanket had been

washed or tampered with prior to testing. Appellant argues there were no efforts to confiscate R.B.'s telephone despite testimony about messaging between Appellant and R.B. Hill testified R.B.'s phone only had wi-fi service, and not carrier service from which records could be obtained. Hill was told the messages were sent from the Kik app, which is a Canadian app that does not honor United States search warrants. Further, R.B. had deleted images from her phone, and for all these reasons police did not pursue evidence from her telephone.

**{¶60}** Appellant argues Spencer's notes contained concerns about R.B. recanting. However, R.B. testified she had earlier denied the sexual abuse to police because she was concerned something bad would happen to her mom. Appellant argues R.B.'s testimony is not credible because she testified her sister walked in when Appellant was fingering her and humping her, yet her sister testified she did not see anything. However, R.B. testified she was unsure as to whether her sister saw anything, she only knew her sister walked in when something was going on.

**{¶61}** Based on the testimony, we do not find the jury lost its way in finding appellant guilty, and the judgment is not against the manifest weight of the evidence.

**{¶62}** The fourth assignment of error is overruled.   The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, J.

Delaney, P.J.  and

Baldwin, J. concur