IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff - Appellee | : | NUNC PRO TUNC |
| | : | |
| | : | JUDGMENT ENTRY |
| -vs- | : | |
| | : | |
| | : | |
| RONALD R. SMITH, | : | Case No. 2017CAA080060 |
| | : | |
| Defendant - Appellant | : | |

The Opinion previously issued in this case contained a typographical error.  On page 2, the writing author was cited incorrectly.  It should read "Baldwin, J."


HON. CRAIG R. BALDWIN


HON. JOHN W. WISE


HON. WILLIAM B. HOFFMAN

[Cite as *State v. Smith*, 2018-Ohio-1495.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 17CAA080060 |
| | : | |
| RONALD R. SMITH | : | |
| | : | NUNC PRO TUNC |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Case No. 16CR-I-12-
0619


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      April 17, 2017


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

CAROL HAMILTON O'BRIEN                      DAVID BIRCH
DELAWARE CO. PROSECUTOR                     286 South Liberty St.
KIMBERLY E. BURROUGHS                       Powell, OH 43065
140 N. Sandusky St.
Delaware, OH 43015

*Baldwin, J.*

**{¶1}**  Appellant Ronald R. Smith appeals from the July 18, 2017 Judgment Entry on Sentence of the Delaware County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

**{¶2}**  Jane Doe is the step-granddaughter of appellant and Cheryl Smith.  Doe's Mother is the daughter of Cheryl and stepdaughter of appellant.  Cheryl has another daughter, Aunt, whose children were close with Jane Doe and her siblings.  At the time of these events, appellant and Cheryl lived in a trailer in the city of Delaware.  Mother and Aunt were frequent visitors with their children, staying in the trailer sometimes for days at a time.

**{¶3}**  Appellant worked as an over-the-road semi driver and was often away during the week.  The female grandchildren would sleep with Cheryl in her bed while appellant was away, and the male grandchildren would sleep on the floor in the living room.  Mother and/or Aunt would sleep in the second bedroom, sometimes with boyfriends.

**{¶4}**  The family claimed to have unusual rules: none of the grandchildren were permitted to be alone with Paw-Paw (appellant), and none of the children were permitted to sit on his lap.  These rules purportedly arose because a former common-law spouse of Cheryl sexually abused Mother and Aunt and was sentenced to three life terms in prison.  Appellant therefore "didn't want to be accused of anything he didn't do."

*Disclosure*

{¶5} Jane Doe was 15 years old at the time of trial. She testified that on more than one occasion when she was younger, she watched T.V. in the living room of the trailer with appellant seated on the couch beside her. Doe testified appellant would make her touch him by placing her hand on his penis and "moving it around." Doe would get up and leave the room. Doe testified this happened frequently and she told Mother about it but nothing changed. When the abuse occurred, Cheryl was usually in the trailer, but doing other things such as cooking or laundry.

{¶6} One night in July 2012, Doe spent the night in the trailer. Doe testified she slept in the master bedroom, in the bed with Cheryl. Mother and a boyfriend were in the second bedroom, and Doe's male siblings were in the living room. Doe awoke in the middle of the night to appellant in the bed next to her, touching her vagina. She testified he had pulled her underwear down to her thighs and touched her under her nightgown. Doe moved away from appellant and put her arm on Cheryl. Doe thought Cheryl was sleeping because she was snoring and she didn't wake up when Doe put her arm around her.

{¶7} Appellant got out of the bed and went onto the patio and started his Harley-Davidson motorcycle. Doe testified he did this because he was angry. The sound of the motorcycle startled everyone in the trailer awake. The various family members who testified at trial, on behalf of both appellee and appellant, remembered this night distinctly because it was the only night appellant woke everyone with the motorcycle.

{¶8} Doe did not immediately tell anyone about the rape. In 2016, one of her siblings died suddenly and Doe was depressed and cutting herself. She was hospitalized for over a week due to a suicide attempt and entered intensive counseling upon her

release. During one of the early counseling sessions, she revealed the sexual abuse to her counselor. The counselor reported the abuse to Children's Services, who in turn reported the abuse to the Delaware Police Department.

*Mother's Testimony and Investigation*

{¶9} Mother testified for appellee at trial. She said she lived with appellant and Cheryl off and on for several years. Mother remembered the night in 2012 when appellant woke everyone with the motorcycle, but she didn't know about the rape at that time. Very shortly after that night, appellant, Cheryl, and the grandchildren moved to Texas. Mother followed a few months after, and eventually the entire family returned to Ohio.

{¶10} Mother testified that after appellant and Cheryl moved to Texas, one day Doe told her "Paw-Paw made her sit on his lap" and "touched her leg." Mother said she was driving at the time and pulled over to the side of the road to tell Doe "we don't sit on Paw-Paw's lap." She was unaware of any other allegations until 2016, after Doe was released from the hospital. The counselor called Mother in and told her the allegations. Mother acknowledged she has a "distant" relationship with Cheryl because Cheryl did not protect her from abuse when she was younger. She acknowledged Cheryl and appellant gained custody of one of her children before the move to Texas.

{¶11} A social worker from the Delaware County Department of Jobs and Family Services testified about her forensic interview of Jane Doe, stating delayed disclosure of abuse is not unusual. A detective watched the forensic interview on closed-circuit television and another detective spoke to appellant and Cheryl for follow-up. Detective Sergeant Bolen testified appellant told him he came home from work that night in July 2012 and was angry to see Doe in the bed with Cheryl, so he started the motorcycle

because he was angry. Cheryl told Bolen more details about who was in the trailer that night, including Mother and her boyfriend, Doe, and Doe's siblings.

*Defense Case: A New Witness Comes Forward*

**{¶12}** A number of family members testified on appellant's behalf at trial. His stepsister testified the family rules were well-known: the children were not to be alone with appellant and were not to sit on his lap. One of Doe's brothers testified Doe was never alone with appellant; he didn't believe the allegations against appellant; and a third child, a female Cousin, was in the bed with Cheryl and Doe that night. Doe's brother acknowledged he has animosity against Mother, who lost custody of him to Cheryl and appellant at one point.

**{¶13}** The female Cousin testified on behalf of appellant. She is one of Aunt's daughters and was once close with Doe. Cousin testified she was in the trailer on the night of the motorcycle incident. She said appellant came home from work and she heard him come into the room because the floor squeaked. She said appellant left the room because there was no room for him in the bed and started the motorcycle as a joke. Cousin acknowledged that her two written statements to law enforcement were written by Cheryl.

**{¶14}** Cheryl testified that she has a rocky relationship with Mother due to the abuse Mother suffered as a child. Despite this tense relationship, Mother and her children often stayed at the trailer, as did Aunt and her children. Cheryl testified she was never alone in the trailer with only appellant and Doe, and appellant and Doe never watched T.V. in the living room together, so it was not possible that appellant made Doe touch him.

**{¶15}** Cheryl remembered the night of the motorcycle incident. She said she woke up when appellant came into the room because the floor squeaked, and she heard appellant say, "I'll be damned, I'm home from the road and I can't even sleep in my own bed." Cheryl testified Doe and Cousin were in bed with her, and after the motorcycle started, they got up so appellant could sleep for a while. On cross-examination, the prosecutor asked Cheryl why she never told detectives Cousin was also present in the bed that night, and Cheryl insisted she did tell the detective about Cousin. She testified Bolen was lying when he said Cheryl and appellant never mentioned Cousin.

**{¶16}** Appellant testified on his own behalf. He reiterated that children never sat on his lap and denied that he ever made Doe touch him. He denied that he touched Doe on the night of the motorcycle incident. He said he came home and found three people in his bed, and was angry that he couldn't sleep after work, so he started the motorcycle. Appellant "thought" he told the detective that Cousin was present in the bed that night but he wasn't sure. Appellant agreed with Cheryl, however, that Bolen lied on the stand because he did know Cousin was also a witness.

*Indictment, Trial, Conviction, and Sentence*

**{¶17}** Appellant was charged by indictment with one count of rape of a child under the age of 13 pursuant to R.C. 2907.02(A)(1)(b), a felony of the first degree [Count I], and two counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4), both felonies of the third degree [Counts II and III]. Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant was found not guilty upon Count I and guilty upon Counts II and III. The trial court ordered a pre-sentence investigation and the matter proceeded to sentencing on July 18, 2017. The trial court imposed a 3-year term of

community control, including, e.g., 60 days of local incarceration. Appellant was determined to be a Tier II sex offender.

**{¶18}** Appellant's sentence was stayed pending appeal.

**{¶19}** Appellant now appeals from the trial court's July 18, 2017 judgment entry.

**{¶20}** Appellant raises one assignment of error:

### ASSIGNMENT OF ERROR

**{¶21}** "THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### ANALYSIS

**{¶22}** In his sole assignment of error, appellant argues his convictions upon two counts of gross sexual imposition are against the manifest weight of the evidence. We disagree.

**{¶23}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶24}** A manifest-weight challenge "concerns 'the inclination of the *greater amount of credible evidence * * ** to support one side of the issue rather than the other.' "

(Emphasis sic.) *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, citing *Thompkins,* supra, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In addressing a manifest-weight argument, we are able to consider the credibility of the witnesses. *State v. Sanders*, 5th Dist. Ashland No. 15-COA-33, 2016-Ohio-7204, 76 N.E.3d 468, ¶ 38, citing *State v. McCrary,* 10th Dist. Franklin No. 10AP–881, 2011-Ohio-3161, 2011 WL 2536451, ¶ 13, internal citation omitted.

**{¶25}** Appellant was found guilty of two counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4), which states: "No person shall have sexual contact with another, not the spouse of the offender[,] * * * when any of the following applies: [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."  Sexual contact is defined by R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶26}** Appellant argues his convictions are based solely upon the testimony of Jane Doe, in contradiction of the other witnesses.  Appellant points out that Mother testified Doe only told her appellant made her sit on his lap and touched her leg; several witnesses testified to the "strict rules" of the household about appellant not being alone with the grandchildren; and no one noticed anything unusual about Doe's relationship with appellant and she didn't seem afraid of him.  The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them

accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016-Ohio-3082, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

**{¶27}** Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence that would demonstrate a lack of credibility of Jane Doe, who testified that appellant would place her hand on his penis and "move it around." She testified this happened frequently and she told Mother about it but nothing changed.

**{¶28}** Appellant implies the convictions cannot rest upon Jane Doe's testimony alone, but it was the jury's role to evaluate the credibility of all of the witnesses and resolve conflicts in the evidence. See, *State v. Eichorn*, 5th Dist. Morrow No. 02 CA 953, 2003-Ohio-3415, appeal not allowed, 100 Ohio St.3d 1471, 2003-Ohio-5772, 798 N.E.2d 406, and appeal not allowed, 117 Ohio St.3d 1480, 2008-Ohio-1841, 884 N.E.2d 1110; *State v. Burge*, 5th Dist. Stark No. 2016CA00217, 2017-Ohio-7862; *In re M.B.*, 5th Dist. Ashland No. 15-COA-028, 2016-Ohio-4780, appeal not allowed*,* 147 Ohio St.3d 1507, 2017-Ohio-261, 67 N.E.3d 824, and cert. denied sub nom. *M.B. v. Ohio*, 137 S.Ct. 2276, 198 L.Ed.2d 708 (2017).  The jury in this matter chose to believe the victim; the jury was in the best position to assess her testimony and found her to be a credible witness. See, *State v. Hill*, 5th Dist. Muskingum No. CT2009-0044, 2010-Ohio-4295; *State v. Southall*, 5th Dist. Stark No. 2008 CA 00105, 2009-Ohio-768.

**{¶29}** We have reviewed the record in the case of sub judice and are not persuaded by appellant's contention that the jury's verdict led to a manifest miscarriage

of justice. As we have often emphasized, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. *State v. Reardon*, 5th Dist. Tuscarawas No. 2001AP080082, unreported, 2002 WL 1025488, *2 (May 17, 2002), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The implicit credibility conclusions of the jurors are not a sufficient basis for now claiming they effectively lost their way under the circumstances of this case. *Id.*

{¶30} Appellant thus has not shown that "a miscarriage of justice" occurred or that the jury "lost its way" when it found him guilty of two counts of gross sexual imposition. His sole assignment of error is overruled.

## CONCLUSION

{¶31} Appellant's sole assignment of error is overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, J.,

Wise, John, P.J. and

Hoffman, J., concur.