[Cite as *State v. Washington*, 2018-Ohio-3177.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| JONATHAN WASHINGTON | : | Case No. 17CA72 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County
Court of Common Pleas, Case No.
2016-CR-0754

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     August 8, 2018

APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

GARY BISHOP                                   JEFFREY P. UHRICH
Prosecuting Attorney                          Law Office of Jeffrey P. Uhrich
Richland County, Ohio                         P.O. Box 1977
                                              Westerville, Ohio 43086
JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

**{¶1}** On August 7, 2017, appellant was convicted by a jury in the Richland County Court of Common Pleas of two counts of kidnapping (R.C. 2941.02(A)(2)), aggravated robbery (2911.01 (A)(1)), robbery (2911.02 (A)(2)), and theft of a motor vehicle (2913.02 (A)(2)).

**{¶2}** Appellant appeals the decision of the Richland County Court of Common Pleas denying his Crim.R. 29 motion and the Court's ruling on his objection to the testimony of Sarah Beran regarding comments made by Dominique Granger during a telephone conversation. Appellant also contends the jury's verdict was against the manifest weight of the evidence and was not supported by sufficient evidence.

**{¶3}** Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

**{¶4}** This case began on October 21, 2016 when appellant accosted Dominique Granger and forced him into a red Grand Am. Mr. Granger reported that appellant robbed and kidnapped him from his residence on October 21, 2016. He testified that he was exiting his home when appellant struck him in the head with a gun and forced him into the driver's seat of a red Pontiac Grand Am, a vehicle owned by Mr. Granger's current girlfriend, Shelby May. Appellant asked Mr. Granger about a person he called "Bunk" and ordered him to drive to Sara Beran's house. Ms. Beran was Mr. Granger's ex-girlfriend and "Bunk" was her new boyfriend. Appellant focused on finding "Bunk" and provided no other reason for the abduction.

**{¶5}** During cross examination, Tiffany Stamper contradicted Mr. Granger's description of the initial meeting between appellant and Mr. Granger on October 21, 2016.

She recalls texting Mr. Granger to come to her residence so she and appellant, who was with her at the time, could buy cocaine from Mr. Granger. Ms. Stamper agreed that she had told the police officer that Mr. Granger and appellant left in the red Grand Am. She also told the officer that appellant returned without Mr. Granger and then told her that he hit Mr. Granger's head with a pistol and kept him in the trunk for three or four hours. She also testified appellant was in possession of a gun, later determined to be a BB gun, that was used to assault Mr. Granger. She had seen the gun earlier that night and it was not broken. She noted that it was broken when appellant showed it to her upon returning from his meeting with Mr. Granger. She also reported to the investigating officer that appellant admitted that he had wrecked the Pontiac Grand Am and destroyed Mr. Granger's phone.

{¶6} When appellant and Mr. Granger arrived at Sara Beran's home, appellant put Mr. Granger in the trunk of the vehicle and knocked on the door. Appellant discovered that Ms. Beran was not home, so he forced Mr. Granger to call her and tell her to come home. Mr. Granger testified that he called Ms. Beran and plead with her to return home with Bunk as soon as possible.

{¶7} Ms. Beran answered Mr. Granger's call, and she described his voice as scared and upset. Mr. Granger told her that appellant had him in the trunk of a car and needed Ms. Beran and "Bunk" to come to the house. Appellant then took the phone and told Ms. Beran that she had five minutes to get "Bunk" to her house or he was going to shoot Mr. Granger. Ms. Beran said she was on her way and then called the police.

{¶8} At the conclusion of the call, appellant closed the trunk with Mr. Granger inside and drove the car down the street. Appellant stopped the car, opened the trunk, hit

Mr. Granger with the gun and told him that he broke Mr. Granger's phone and was going to kill him. Appellant also took a necklace and $180.00 from Mr. Granger. Mr. Granger was trapped in the trunk for about three to four hours.

{¶9} On at least one occasion appellant opened the trunk halfway, then closed it. The record does not clearly show how many times this happened or appellant's intent, but Mr. Granger believed appellant was looking for a piece of the gun that had broken off when he struck Mr. Granger. Mr. Granger had found and hidden that piece in the trunk so that appellant could not reattach it to the gun.

{¶10} Without warning, appellant released Mr. Granger, telling him that appellant's friend had saved him. Appellant told Mr. Granger that he was taking the car but would leave it at a bar called Mr. P's.

{¶11} Though Mr. Granger was struck with the gun at least seven times and had suffered lacerations and bruising to his head and face, he hurried away from appellant and went to his sister's house to get help. Once there, he contacted girlfriend, Shelby May, and told her appellant planned to leave the vehicle at a bar. When Ms. May and the police arrived at the bar, the car was not there. The Mansfield Police Department issued a notice to law enforcement agencies to be on the lookout for the vehicle.

{¶12} Shortly after the issuance of the notice to be on the lookout for Ms. May's red Grand Am, Trooper Duane Hunsicker of the Ohio State Highway Patrol saw a vehicle matching the description of the vehicle. He confirmed the license plate number with dispatch, followed the vehicle and waited for a second trooper to arrive. Before a second trooper could arrive, the driver of the red Grand Am suddenly accelerated, hit a retaining

wall and abandoned the car. The Mansfield Police Department recovered the vehicle and placed it in evidence.

{¶13} Once the Grand Am arrived at the Mansfield Police Department, the officers and staff took an inventory of the contents of the vehicle, checked for fingerprints and swabbed for DNA. The investigators did not find any usable fingerprints, but the inventory and DNA testing did produce relevant evidence.

{¶14} A cell phone was located inside the vehicle. Also, Mr. Granger's ID and part of a gun were found in the trunk of the car. Mr. Granger's Social Security card was also found in the center console of the vehicle.

{¶15} The State obtained a warrant, examined the data in the phone recovered from the vehicle and discovered text conversations between appellant and Miss Stamper supporting the conclusion that the cell phone was appellant's and that he had used the vehicle to kidnap Mr. Granger.

{¶16} The State conducted DNA tests of the BB gun, the cell phone and the steering wheel of the Grand Am. The DNA tests of the piece of the BB gun retrieved from the trunk of the Grand Am tested positive for Mr. Granger's DNA. The results of the DNA tests for the cell phone retrieved from the Grand Am and the steering wheel inside the vehicle were not conclusive, but the appellant could not be eliminated as a contributor.

{¶17} Appellant's friend, Tiffany Stamper, spoke with appellant on October 21, 2016 after the Grand Am was abandoned. Appellant told her that he was driving a car and had crashed it while fleeing the police. He said he was able to get away from the police because he left the car and ran. He was attempting to explain why he did not respond to her text messages when he said he may have left his phone in the woods

when he ran from the police. During that conversation, appellant admitted to Ms. Stamper that he put Mr. Granger in the trunk of a car and hit him. Appellant showed Ms. Stamper the broken gun he used which turned out to be a BB gun. Appellant also admitted to Ms. Stamper that he took money and a chain from Mr. Granger and that he destroyed Mr. Granger's phone.

{¶18} Mansfield Police interviewed Mr. Granger at the police station on October 24, 2106 and during the interview, he identified appellant as the man who robbed and kidnapped him. He repeated that identification during the trial.

{¶19} On the night of November 7, 2016, Officer Justin Cikity was dispatched to apprehend the appellant. When approached by Office Cikity, appellant advised the officer that he had a BB gun in his pocket. The officer recovered the BB gun and placed it with the remaining evidence that had been gathered. Later, appellee discovered that the piece that was recovered from the trunk of the Grand Am was the missing part of the BB gun taken from appellant.

{¶20} After the appellant was taken into custody, Detective Bill Bushong spoke with him. Appellant said that the gun belonged to Ms. Stamper's child and that when he got out of custody he was "going to whup that boy's ass" referring to Dominique Granger (Tr, p. 703, lines 9-14). Immediately after speaking with appellant, Detective Bushong visited Ms. Stamper. She provided a statement and commented that she had a piece of jewelry that may be relevant, but she was unable to find it. She contacted Detective Bushong the next day and told him that she located the pendant. The pendant was recovered and Mr. Granger identified it as one taken from him by appellant.

**{¶21}** The BB gun used to assault Mr. Granger was described by Detective Bushong and evidence technician Cindy Reed as similar to a real firearm. They confirmed that it had enough weight and mass that, even though the top piece may be plastic, it was sufficient to cause injury.

**{¶22}** On December 9, 2016, the Richland County Grand Jury indicted appellant with six counts:

Count One: Aggravated Robbery, a felony of the first-degree in violation of R.C. 2911.01(A)(1).

Count Two: Robbery, a felony of the first-degree in violation of R.C. 2911.02(A)(2).

Count Three: Kidnapping, a felony of the first-degree, in violation of R.C. 2905.01(A)(2).

Count Four: Kidnapping, a felony of the first-degree, in violation of R.C. 2905.01(B)(1).

Count Five: Theft of a Motor Vehicle, a felony of the fourth-degree in violation of R.C. 2913.02(A)(1), (5).

Count Six: Having Weapons While Under Disability, a felony of the third-degree in violation of R.C. 2923.13(A)(2).

**{¶23}** Appellant entered pleas of not guilty at his arraignment on December 20, 2016 and was appointed counsel. Appellant's case proceeded to trial on July 31, 2017 and ended on August 7, 2017. After the State's case in chief, the State moved to dismiss Count Six which was granted by the Trial Court. Appellant moved for dismissal pursuant to Crim.R. 29 and that motion was denied.

**{¶24}** After the appellant completed his case, the jury was charged and returned a verdict. Appellant was found guilty of Counts One, Two, Four and Five and not guilty on Count Three. Sentencing was then held on August 7, 2017. As to the Aggravated Robbery charge, the Trial Court imposed a sentence of eleven years which was merged with Count Two. Appellant was sentenced on Count Four to five years and to eighteen months on Count Five. All sentences as well as six hundred and six days due to his violation of post-release control were ordered to be served consecutively.

**{¶25}** Appellant filed a notice of appeal on August 25, 2017 and has submitted three assignments of error:

**{¶26}** I. THE TRIAL COURT ERRED IN OVERRUING (SIC) THE APPELLANT'S MOTION FOR AQUITTAL (SIC) PURSUANT TO OHIO RULE CRIMINAL PROCEDURE 29(A).

**{¶27}** II. THE CONVICTIONS OF AGGRAVATED ROBBERY, ROBBERY, KIDNAPPING AND THEFT OF A MOTOR VEHICLE WERE NOT SUSTAINED BY THE EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶28}** III. THE TRIAL COURT ERRED WHEN IT PERMITTED HEARSAY TESTIMONY OF A LAY WITNESS REGARDING STATEMENTS MADE (SIC) ANOTHER WITNESS DURING A TELEPHONE CONVERSATION.

**ANALYSIS**

**{¶29}** In appellant's first and second assignments of error he argues the trial court erred by overruling his Crim.R. 29 motion for dismissal, that the decision was against the manifest weight of the evidence and that there was insufficient evidence to support the

verdict. The standard of review for these assertions are such that our review of the first and second assignments will be consolidated.

**{¶30}** Rule 29(A) of the Ohio Rules of Criminal Procedure states:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

The standard of review under Crim.R. 29(A) is sufficiency of the evidence.

**{¶31}** In reviewing a record for sufficiency, "the relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1981) at paragraph two of the syllabus. As the Ohio Supreme Court stated in *State v. Thompkins,* 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997): "With respect to sufficiency of the evidence, 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed.1990) 1433. See also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148 (1955). In addition, a conviction

based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶32} In the case sub judice, appellant was convicted of one count of kidnapping (R.C. 2905.01(B)(1)), one count of aggravated robbery (R.C. 2911.01(A)(1)), one count of robbery (2911.02(A)(2)), and one count of theft of a motor vehicle (R.C. 2913.02(A)(1)). The testimony and evidence provided by appellee provides a sufficient basis for this court to hold that the trial court did not err in denying the motion for acquittal, that the verdict was supported by sufficient evidence and that the verdict was not against the manifest weight of the evidence.

{¶33} The charge of Theft of a Motor Vehicle requires proof that appellant "with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property *** [w]ithout the consent of the owner or person authorized to give consent." (R.C. 2913.02(A)(1)). The appellant admitted to Ms. Stamper that he had taken a car and wrecked it. Mr. Granger confirmed that appellant took the red Grand Am without his permission and used it in the commission of further crimes. The owner of the vehicle, Roberta May, and the custodian, Shelby May, both confirmed that appellant did not have their authorization to use the vehicle. Appellant's admission, the testimony of the witnesses with the additional evidence and testimony presented to the jury was sufficient to support the charge and the verdict, and the trial court did not err by denying the motion for acquittal.

{¶34} The record likewise contains sufficient evidence to support the kidnapping charges. The State was obligated to show that appellant "by force, threat, or deception,

*** knowingly [did] any of the following, under circumstances that create a substantial risk of serious physical harm to the victim *** [r]emove another from the place where the other person is found." (R.C. 2905.01(B)(1))".

{¶35} Mr. Granger testified that he was forced to drive and then put into the trunk of the Grand Am and kept there while appellant drove the stolen vehicle and attempted to locate and contact Ms. Beran's current boyfriend, "Bunk." After being placed in the trunk, appellant struck Mr. Granger several times and threatened to shoot him with a BB gun that could be mistaken for a real firearm. Appellant took Mr. Granger's necklace, $180.00 in cash and his cell phone while Mr. Granger was held captive in the trunk of the Grand Am. These facts provide sufficient evidence, when considered with all the evidence, to support the trial court's rejection of the motion for acquittal and the jury's verdict.

{¶36} The Revised Code lists the elements of Aggravated Robbery as:

> (A)     No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> > (1)     Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

R.C. 2911.01(A)(1).

{¶37} Appellant contends this charge should be dismissed or the conviction for the same is faulty because appellant used a BB gun, which he claims does not satisfy the

definition of a deadly weapon. The testimony of the witnesses who were asked confirmed that it closely resembled a real fire arm. The appellant brandished the weapon and threatened Mr. Granger with death as if it was a fully functioning weapon.  We have previously concluded that a BB gun used as a weapon combined with the potential use of it as a bludgeon, especially when it was used to injure Mr. Granger's head and face, provide sufficient evidence for the jury to conclude that the gun was a deadly weapon as defined by R.C. 2923.11 (A). *State v. Tessanne,* 5th Dist. Stark No. 1997 CA 00416, 1998 WL 667328, (Sept. 14,1998)*3; *State v. Lloyd*, 5th Dist. Morgan No. 14AP0010, 2015-Ohio-2052, ¶ 17; *State v. McKnight*, 5th Dist. Stark No. 1995CA00241, 1996 WL 74083, (Feb. 5, 1996) *1.

**{¶38}** Because we find the jury could reasonably conclude that the BB gun was a deadly weapon and because it was used by appellant during the theft offense, we hold there was sufficient evidence for the trial court to deny the motion for acquittal on the aggravated robbery charge and the record contain sufficient evidence to support the jury's verdict convicting appellant of the same.

**{¶39}** The State contends that appellant "in attempting or committing a theft offense or in fleeing immediately after the attempt or offense *** [did] inflict, attempt to inflict, or threaten to inflict physical harm on another. (Count II, Robbery, R.C. 2911.02 (A)(2)). The use of the BB gun to inflict physical harm on Mr. Granger while committing the theft offense supported the jury's conviction on that count as well as the judge's refusal to acquit on that count. Mr. Granger testified that he was struck at least seven times by appellant with the BB gun and the cuts bruises and abrasions were evident on his face. As physical harm is defined as "any injury, illness, or other physiological impairment,

regardless of its gravity or duration" (R.C. 2901.01), the wounds on Mr. Granger's face and head satisfied this requirement. The theft of the car, cash, jewelry and phone by appellant is unrebutted by any evidence provided by appellant.

**{¶40}** We hold that the trial court did not err by denying appellant's motion for acquittal and that there was sufficient evidence to support the jury's guilty verdict for robbery.

**{¶41}** We likewise find that the verdict was not against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 1997-Ohio-52, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.* We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶42}** The record contains nothing that would support a conclusion that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be overturned and a new trial ordered." Therefore, appellant's first two assignments of error are overruled.

{¶43} In appellant's third assignment of error he contends that the trial court erred by allowing Sara Beran to testify regarding her telephone conversation with Mr. Granger when Mr. Granger claimed that appellant "robbed him, kidnapped him, and stole the red Pontiac Grand Am." Ms. Beran's statements were actually much more limited:

Q.      When you receive the phone call from Dominique on the phone, can you describe his demeanor to the jury.

A.      Yeah. He was really scared. He sounded scared and upset. I repeatedly asked him what was going on. And he was telling me that Gotti had him in the trunk of the car and that he needed me to get there and bring Bunk to the house.

***

A:      I asked him if he was okay, because at that point it became apparent that something was wrong because of the sound of his voice. He said no, that Gotti has got me in the trunk of the car; he wants you to bring Bunk to your house.

Trial Transcript, p. 340.

{¶44} Appellant objected to this testimony and the court overruled the objection considering the testimony an "excited utterance."

{¶45} The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A reviewing court

must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. *Id.,* citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Adams* supra, at 157. The trial court did not abuse its discretion by admitting this evidence.

**{¶46}** Under Evid.R. 803 a statement is not hearsay if it is an excited utterance.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). A four-part test is applied to determine the admissibility of statements as an excited utterance:(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement **978 of declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and (d) that the declarant had an opportunity to observe personally the matters

asserted in his statement or declaration.*42 (Emphasis sic.) *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus, followed and approved in *State v. Taylor*, 66 Ohio St.3d 295, 612 N.E.2d 316 (1993), fn. 2.

*State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166.

**{¶47}** Mr. Granger's statement that "**** Gotti had him in the trunk of the car and that he needed me to get there and to bring Bunk to the house" was made in the midst of the kidnapping while Mr. Granger was being held at gunpoint. Appellee provided sufficient foundation to satisfy all of the elements set forth above by the Ohio Supreme Court in *Taylor*. Further, the declarant, Mr. Granger, testified in court regarding the statement and was subject to cross-examination. Consequently, even if, arguendo, the statement was impermissible hearsay we find that it was cumulative and therefore, harmless. *State v. Burge,* 5th Dist. Stark No. 2016CA00217, 2017-Ohio-7862, ¶ 30.

**{¶48}** Appellant's third assignment of error is overruled.

**{¶49}** The judgment of the Common Pleas Court of Richmond County is affirmed.

By: Baldwin, J.

Earle Wise, J. concurs.

Hoffman, P.J. concurs separately.

*Hoffman, P.J., concurring*

**{¶50}** I concur in the majority's general analysis and disposition of Appellant's three assignments of error.  I write separately only with respect to the standard of review utilized in reviewing Appellant's third assignment of error.

**{¶51}** *State. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343(1987) established the abuse of discretion standard in determining the admission or exclusion of "relevant" evidence.  Ordinarily review of a trial court's ruling on hearsay is under the abuse of discretion standard.  *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E. 2d 126 (1967). However, while a trial court is vested with broad discretion in determining the admissibility of evidence, such discretion must be exercised in line with the rules of procedure and evidence.  *Rigby v. Lake Cty*, 58 Ohio St.3d 269, 271, 569 N.E. 2d. 1056 (1991).

_____
HON. WILLIAM B. HOFFMAN